Peggy A. HART, Petitioner,

v.

DEPARTMENT OF AGRICULTURE
and United States of America,
Respondents.

No. 96–1187.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 27, 1997.

Decided May 16, 1997

John T. Parry, Washington, DC, argued the cause and filed the briefs, for petitioner.

Libbi J. Finelsen, Attorney, U.S. Department of Agriculture, argued the cause, for respondents, with whom James Michael Kelly, Associate General Counsel, was on the brief.

Before GINSBURG, SENTELLE, and HENDERSON, Circuit Judges.

GINSBURG, Circuit Judge:

Peggy A. Hart petitions for review of the Secretary of Agriculture's determination that she was "responsibly connected" to the M&M Banana Company as an officer and director when that company violated the Perishable Agricultural Commodities Act of 1930. 7 U.S.C. §§ 499a–499s. Hart contends that the Secretary did not apply the correct legal standard to her case and that she in fact rebutted the statutory presumption that she was responsibly connected to M&M Banana. Because we cannot determine from the present record whether the Secretary applied the correct legal standard, we grant the petition for review and remand this matter for further proceedings consistent with this opinion.

## I. BACKGROUND

In June 1993 the Deputy Director of the Fruit and Vegetable Division of the Agricultural Marketing Service filed a complaint alleging that M&M Banana had flagrantly and repeatedly violated the PACA by failing to pay for produce purchased in 1992 and 1993. At the same time the Chief of the PACA Branch of the Fruit and Vegetable Division informed Hart that, as an officer and director of M&M Banana, she was a responsibly connected individual subject to the employment restrictions of the PACA; as a result she would be prohibited from working for any PACA licensee for a period of at least one year. See.7 U.S.C. § 499h(b).

Hart responded by letter that she could not be deemed responsibly connected to the company because she was only a nominal director and officer of the corporation: she had "made no policy decisions," and had "merely [done] as [she] was instructed by the company's owner," who was also her father. The Branch Chief treated Hart's response as a formal request for a determination of her status and in December 1993 informed Hart that she had been found responsibly connected and would be subject to the employment restrictions of the PACA. Hart petitioned the Administrator of the AMS for review of that decision and requested a hearing.

The Administrator designated a Presiding Officer, who held a hearing in July 1994. Because the transcript of that hearing disappeared under circumstances that remain a mystery, a second hearing was held in May 1995. Both sides put on witnesses and the agency also put into evidence a variety of corporate records.

The PO issued his decision in January 1996. He found, among other things, that: (1) Hart alone signed the "1991 Domestic Corporation Annual Report," which is required by state law to be signed "by one officer or two directors"; (2) Hart was authorized by the Board in her capacity as Treasurer to deal with the corporation's bank; (3) Hart attended monthly meetings of the Board of Directors at which were discussed a credit approval made by Hart, a corporate name change, the possibility of obtaining loans for new trucks, a new computer system, a reduction in the amount of M&M's debt, reduction of overtime and salaries, the effect of bankruptcy on the company, and a reorganization plan. The PO also observed that Hart's sister, Patrice McCoy, had testified that, at board meetings: "we would all bring up issues, things that were going on. And of course, we would discuss them. You know, we are his daughters; we had opinions about what was going on. But the ultimate decision was always made by him."

Based upon these findings the PO concluded that Hart had been responsibly connected to M&M Banana during the relevant period. The PO supported his decision for the most part with references to the case law of circuits that apply a *per se* rule that has been expressly rejected by this Circuit. He did go on to acknowledge, however, that this court had held in *Quinn v. Butz*, 510 F.2d 743 (D.C.Cir.1975), that an officer or director "should be afforded the opportunity to rebut the Agency determination" that she is responsibly connected to the violator, "but clearly placed the burden of proof on the petitioner." The PO then concluded that Hart had:

failed to sustain that burden. The official file and testimony indicate that [Hart and McCoy] were officers and directors of M&M Banana Co., Inc. during the period material to these issues ... and that M&M

Banana Company, Inc., was a valid corporation ... [and] that [Hart and McCoy] had an actual significant nexus with M&M Banana Co., Inc. during the period of April 1992 through February 1993.

Thereafter the Administrator of the AMS issued a final order on behalf of the Secretary affirming the PO's decision. Hart then filed her petition for review with this Court.

## II. ANALYSIS

An officer, director, or holder of more than ten percent of the stock of a corporation licensed under the PACA is presumed, pursuant to § 499a(b)(9) of the PACA, to be "responsibly connected" to that corporation. 7 U.S.C. § 499a(b)(9). For many years the circuits were divided over whether the presumption of § 499a(b)(9) is irrebuttable, *see Birkenfield v. U.S.*, 369 F.2d 491 (3d Cir. 1966); *Pupillo v. U.S.*, 755 F.2d 638 (8th Cir.1985); *Faour v. USDA*, 985 F.2d 217 (5th Cir.1993), or, as we held, rebuttable. See *Quinn v. Butz*, 510 F.2d at 757. In 1995 the Congress amended § 499a(b)(9) to make it clear that the presumption is rebuttable:

A person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not actively involved in the activities resulting in a violation of this chapter and that the person either was only nominally a partner, officer, director, or shareholder of a violating licensee or entity subject to license or was not an owner of a violating licensee or entity subject to license which was the alter ego of its owners.

7 U.S.C. § 499a(b)(9), *as amended by* Pub.L. No. 104–408, § 12(a), 109 Stat. 430 (Nov. 15, 1995).

 Prior to the amendment of § 499a(b)(9) we held that an officer, director, or ten percent shareholder could rebut the presumption against her by showing either that the corporate violator is nothing more than the alter ego of its owner or that she was only a nominal officer, director, or shareholder of that corporation. *Bell v. Department of Agriculture*, 39 F.3d 1199, 1201 (D.C.Cir.1994). In order to prove that the corporation is the alter ego of its owner one

must show that the owner so dominated the corporation as "to negate its separate personality." *Quinn,* 510 F.2d at 758. In order to prove that one was only a nominal officer or director, one must establish that one lacked any "actual, significant nexus with the violating company" and, therefore, neither "knew [n]or should have known of the [c]ompany's misdeeds." *Minotto v. USDA,* 711 F.2d 406, 408–409 (D.C.Cir.1983). *See also Quinn,* 510 F.2d at 756, n. 84 (observing that situation in which "the affiliation is purely nominal and the so-called officer had no powers at all" is "radically different" from one in which a genuine officer simply "does not use the powers of his office.")

■ Hart argues that the AMS failed to apply the correct legal standard when assessing the evidence and testimony that she offered in order to rebut the presumption that she was responsibly connected to M&M. The PO, according to Hart, failed even to consider whether she proved that she was only a nominal officer because he applied the *per se* rule followed in other circuits. Hart maintains that the PO required her to show not merely that she was an officer and director on paper only, but rather that she was not an officer or director even on paper— contrary to the law of this circuit and, in light of the recent amendment to the PACA, contrary to the law of the land.

The AMS responds, first, that the Congress did not intend that the PACA amendment be applied retroactively; in the alternative, the AMS maintains that the PO fully conformed to the amendment because he afforded Hart the opportunity to rebut the presumption against her. For the same reason, the agency contends that the PO applied the law of this Circuit as stated in *Quinn:* Hart was given a hearing at which she was allowed to present her case. Hart's problem, according to the Government, is not that the PO applied the *per se* rule but that when he weighed the evidence he concluded that Hart had not rebutted the presumption against her.

We do not think the decision of the PO is as clear as either party would have us believe. In response to Hart's contention that she was but a nominal officer, the PO did no more than to note that "[t]he official file and testimony indicate that [Hart and McCoy] were officers and directors of M&M Banana Co., Inc. during the period material to these issues." This conclusory statement does not reveal whether the PO understood that Hart had the burden of proving only that she was a nominal officer and director, not the burden of proving that she was not even formally an officer and director. On remand, therefore, the PO should explain his reason for concluding—if he did so conclude—that Hart was more than a nominal officer or director of M&M.

We find the PO's determination that M&M was not the alter ego of its owner to be similarly lacking in reasoned analysis. In announcing his decision, the PO stated only that M&M "was a valid corporation, having been incorporated in 1956, and corporate records support that conclusion." This is not enough. Even a "valid corporation" may be so dominated by its principal shareholder as to lose its separate personality. *Bell,* 39 F.3d at 1201. Does M&M fit that description? The PO will have another opportunity not only to answer yea or nay but, more important, to say why.

### III. CONCLUSION

The Presiding Officer did not adequately explain his determination that the petitioner failed to rebut the presumption that she was responsibly connected to M&M Banana. We therefore grant the petition for review and remand this matter for the AMS to explain its decision.

*So ordered.*